## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

MICHAEL T. BRANDENBURG,     *

        Plaintiff,     *

    v.          *     CV 106-152

BOARD OF REGENTS OF THE    *
UNIVERSITY SYSTEM OF GEORGIA,  *
MCG HEALTH, INC., and JOHN   *
AND JANE DOES,     *

        Defendants.    *

---

### ORDER

The following motions are presently pending before the Court: (1) Defendant MCG Health Inc.'s ("MCGHI") Motion for Judgment on the Pleadings (doc. no. 44) and (2) Plaintiff's Motion to Amend the Complaint (doc. no. 73).  Each motion is addressed in turn below.

### I. BACKGROUND[1]

#### A. Factual Allegations

Plaintiff Michael T. Brandenburg is a former employee of the Medical College of Georgia ("MCG"), an entity created and

---

[1] As is the case with a motion to dismiss, when considering a motion for judgment on the pleadings, a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff.  See Roma Outdoor Creations, Inc. v. City of Cumming, Ga., 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008); see also Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

operated by the Board of Regents of the University System of Georgia ("Board of Regents"). MCG terminated Plaintiff's employment on October 3, 2005, and Plaintiff brought suit one year later based upon several incidents that took place in the months leading up to his dismissal. During these final months, Plaintiff was "on loan" to MCGHI, a private corporation created by MCG. The relevant incidents are best summarized as follows:

### (1) Reports of Mold and Mildew

During the spring and summer of 2005, Plaintiff spoke with persons associated with MCG and MCGHI who had authority to take action regarding the presence of dangerous health conditions at MCG facilities. At this time, Plaintiff reported the presence of mold and mildew in buildings owned by MCG and leased to MCGHI. Plaintiff claims that on July 29, 2005, he was "written up" by his supervisors for raising this issue.

### (2) Potential Conflict of Interest

Plaintiff operated a business that supplied bottled water to various entities on the MCG campus. On August 1, 2005, Defendants informed Plaintiff that his supply contract was going to be cancelled because he was not the preferred bottled water vendor.[2] Shortly thereafter, Plaintiff contacted the MCGHI purchasing department regarding this matter, and an MCGHI employee directed Plaintiff to Regina Maiers ("Maiers"), who worked in MCGHI's compliance office.

A few weeks later, Plaintiff attended a meeting with Maiers, at which she implied that Plaintiff's dual

---

[2] It is unclear what "contract" Plaintiff is referring to in this portion of the Complaint. This is due both to a lack of specific facts regarding the contract at issue and the previous allegations that appear to indicate Plaintiff had no contracts with MCG or MCHGI. (See Compl. ¶ 20 ("For years Plaintiff operated a business selling water, and he had many contracts on the MCG campus, through entities other than MCG, and he had none with MCGHI.").)

roles as a bottled water supplier to MCG and an MCG employee had created a conflict of interest. In response, Plaintiff asked if there had been any investigation with regard to the "preferred vendor," a member of the MCGHI board of directors, who he alleged also may have had a conflict of interest. In September of 2005, Don Snell, CEO of MCGHI, initiated an investigation with respect to this issue.

*(3) Work Injury*

On September 20, 2005, Plaintiff had a job-related injury. Despite his injury, Plaintiff's supervisor requested that he come into work due to an emergency. As a result, Plaintiff complained to his supervisor.

*(4) Inappropriate Comment*

On or about September 25, 2005, Plaintiff participated in a conversation with a patient's father regarding the father's foot condition. The substance of this conversation was reported to supervisors at MCGHI. As a result, Dr. Pearson-Shaver drafted a letter containing allegations against Plaintiff.

As previously stated, on October 3, 2005, Plaintiff was dismissed from his position at MCG without prior notice and an opportunity to respond to the allegations brought against him. Plaintiff contends his termination was an act of retaliation based upon the "whistle blowing" activity described above. Plaintiff further alleges that, since his termination, Defendants have unlawfully interfered with his attempts to contact MCG/MCGHI employees regarding this lawsuit.

Based upon these factual allegations, Plaintiff has brought claims pursuant to 42 U.S.C. §§ 1983 & 1981, and the Georgia Whistleblowers Act, O.C.G.A. § 45-1-4. He seeks injunctive

3

relief—in the form of reinstatement to a new position with MCG—and money damages.

### B. Procedural Posture

Plaintiff filed a Complaint in this Court on October 3, 2006. Defendants timely responded; the Board of Regents filed a motion to dismiss on February 2, 2007, and MCGHI filed an answer on February 5, 2007. Thereafter, on March 9, 2007, the parties filed a joint motion to stay the case to allow Plaintiff to appeal his termination to the Georgia Office of State Administrative Hearings ("OSAH").

The case was stayed from March 13, 2007, until May 4, 2010, when Defendants filed a motion to re-open the case based upon the resolution of Plaintiff's OSAH appeal. Defendants attached to their motion a copy of a February 10, 2011 letter sent to Plaintiff, informing him that the Board of Regents had reviewed his case and decided to uphold the decision to terminate his employment. The Board of Regents stated this decision was final.

Plaintiff responded in opposition to Defendants' motion to reopen and argued that his OSAH case had been prematurely dismissed while he was pursuing an Open Records Act action against MCG and MCGHI in superior court. Plaintiff attached to

4

his response the June 18, 2009 order dismissing the OSAH case, which reads as follows:

> No action has been taken by Plaintiff for more than two years on the above-styled case. Accordingly, it is hereby ordered that the above-styled action is dismissed. It is further ordered that Plaintiff may recommence the action after completing his action to compel his Open Records Request in the Fulton County Superior Court and the renewed action shall stand upon the same footing with the original action.

(Doc. no. 27, Ex. 5.) In a footnote, the OSAH court denied Plaintiff's "alternative" request for a 60-day continuance, and directed the calendar clerk "to maintain th[e] [case] file, without returning it to the referring agency until December 31, 2009." (Id.) In their reply brief, Defendants quoted the language from this footnote and argued as follows: "When Plaintiff did not re-assert his request for a hearing by December 31, 2009, the OSAH Calendar Clerk returned the file to the Board of Regents, thus concluding the OSAH process." (Doc. no. 31 at 3.)

Ultimately, this Court granted Defendants' motion to reopen the case. The Board of Regents promptly filed a motion to dismiss, which was quickly followed by MCGHI's motion for judgment on the pleadings. On March 31, 2011, the Court granted the Board of Regents' motion to dismiss; however, MCGHI's motion for judgment on the pleadings remains pending, along with Plaintiff's April 28, 2011 motion to amend the complaint.

## II. DISCUSSION

### A. Motion to Amend[3]

Before the Court can address the merits of MCGHI's motion for judgment on the pleadings, it must first decide whether Plaintiff should be permitted to amend his Complaint. On March 31, 2011, the Court dismissed MCG from this case after finding Plaintiff was barred, under the Eleventh Amendment, from bringing a § 1983 suit against MCG, a Georgia state agency. (Doc. no. 68.) Approximately one month later, Plaintiff filed a motion to amend, within which he seeks to, *inter alia*, "name one or more official, acting in their official capacity . . . who would be proper parties to order prospective injunctive relief." (Doc. no. 73 at 1.) He also asks to add a supplemental claim against MCGHI for tortious interference.[4] (Id.) For the reasons set forth below, the Court is unwilling and unable to grant such relief.

On August 25, 2010, the Court entered a scheduling order in which it set a deadline of October 26, 2010, for the filing of

---

[3] Plaintiff's motion is titled, "Motion for New Trial and to Add Defendants in Their Official Capacities and Thereby Amend Order of 3.31.11," but because Plaintiff's motion simply seeks to add new parties and claims, it will be construed as a motion to amend. Moreover, to the extent Plaintiff seeks relief pursuant to Fed. R. Civ. P. 59, such relief is not warranted for the reasons stated herein.

[4] Although not mentioned in his motion, Plaintiff's proposed amended complaint contains a substantial number of additional factual allegations, extensive legal argument, and an additional claim for declaratory/injunctive relief. (Doc. no. 73, Ex. 1.) In all, Plaintiff apparently seeks to add nearly sixteen pages of allegations to his ten-page complaint, most of which he does not even mention in his motion to amend.

all motions to amend or add parties.   At no time has Plaintiff
sought to extend this deadline nor has he, until now, requested
leave to amend his complaint.

"[W]hen a motion to amend is filed after a scheduling order
deadline, [Federal Rule of Civil Procedure] 16 is the proper
guide for determining whether a party's delay may be excused."
Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 n.2 (11th Cir.
1998).   Rule 16(b)(4) states, "[a] schedule may be modified *only*
*for good cause* and with the judge's consent."   Fed. R. Civ. P.
16(b)(4) (emphasis added).   "The good cause standard precludes
modification unless the schedule cannot 'be met despite the
diligence of the party seeking the extension.'"   Sosa, 133 F.3d
at 1418 (quoting Fed. R. Civ. P. 16 Advisory Committee's Note).

> The lack of diligence that precludes a finding of good
> cause is not limited to a plaintiff who has full
> knowledge of the information with which it seeks to
> amend its complaint before the deadline passes.   That
> lack of diligence can include a plaintiff's failure to
> seek the information it needs to determine whether an
> amendment is in order.

Southern Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241
n.3 (11th Cir. 2009).

In support of his motion, Plaintiff argues as follows: "The
Board of Regents, MCG and MCGHI have all been defendants since
the outset.   Adding an individual in his official capacity only
means that the Defendants already named would once again be
Defendants."   (Doc. no. 73 at 4.)   Although this proposition may

be true, Plaintiff cannot establish the requisite level of diligence mandated by Rule 16 and the Eleventh Circuit. To the contrary, the record conclusively demonstrates that Plaintiff has not been diligent in pursuing his claims.

Plaintiff filed suit on October 3, 2006, and on February 2, 2007, the Board of Regents filed its motion to dismiss. (Doc. no. 5.) In this motion, the Board of Regents argued, because it was an arm of the state, it was immune to § 1983 suits pursuant to the Eleventh Amendment. Before Plaintiff filed a response, the case was stayed. On July 16, 2010, the Court lifted the stay, and on July 28, 2010, the Board of Regents filed a second motion to dismiss containing the same Eleventh Amendment immunity argument raised in its previous motion. (Doc. no. 35.) Plaintiff responded on August 20, 2010, and asserted, in a conclusory fashion, that "the Eleventh Amendment does not bar prospective injunctive relief as against a state." (Doc. no. 40 at 3.) As an aside, Plaintiff added, "[a] nominal defendant, such as Dr. Azziz or Michael Adams may need to be added in their officials [sic] capacities to order a full pre-termination hearing, if resisted." (Id.)

Thus, even after twice being put on notice that he had brought suit against an improper party and after recognizing expressly that it may be necessary to name other defendants in order to obtain prospective injunctive relief, Plaintiff still

8

did not seek leave to amend his complaint.    Instead, he allowed this litigation to proceed and, by all appearances, sat idly by as the deadline for amending the complaint expired.[5]

Citing Fed. R. Civ. P. 9(a)(2), Plaintiff contends MCG was required to provide a "specific denial" if it objected to Plaintiff's failure to name an individual in his official capacity.    Fed. R. Civ. P. 9(a) states that a party need not plead its capacity to sue or be sued, or its authority to sue or be sued in a representative capacity.    Rule 9(a)(2) states that to raise any of these issues, "a party must do so by a specific denial."

Plaintiff's reliance on Rule 9 is misplaced.    Here, the issue does not involve a failure to plead capacity, but rather a failure to name an individual, in any capacity, that could provide Plaintiff with the prospective injunctive relief he seeks.    Cf. Parker v. Graves, 479 F.2d 335, 336 (5th Cir. 1973)[6] (finding, pursuant to Rule 9, plaintiff who brought suit against university athletic director need not have alleged whether athletic director was being sued in his official or individual capacity).    Thus, Rule 9 is inapplicable to the instant case.

---

[5] Plaintiff may contend he needed to conduct discovery in order to identify an appropriate state official.    The Court notes, however, Plaintiff had over four months of discovery *after* he expressly recognized the potential need to add a "nominal defendant" in an official capacity.

[6] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in Eleventh Circuit).

As stated in the Court's previous Order, the Supreme Court has created a very narrow exception allowing plaintiffs to bring suits for prospective injunctive relief under § 1983 against state officials in their official capacities. Ex Parte Young, 209 U.S. 123 (1908). Significantly, this exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (citation omitted); see also Cox. v. State of Texas, 354 Fed. Appx. 901, 902 (5th Cir. 2009) (granting motion to dismiss claim for prospective injunctive relief because plaintiff failed to name state official and explaining that "Ex Parte Young only applies to suits for prospective relief against state officials; it 'has no application in suits against . . . States and their agencies.'" (citation omitted)); Shahin v. Del. Dept. of Fin., 344 Fed. Appx. 765, 766 (3d Cir. 2009) (affirming district court's dismissal of action because plaintiff failed to name any state officials with regard to her claim for prospective injunctive relief).

In sum, Plaintiff has failed to show good cause for amending the scheduling order for the purpose of allowing him an opportunity to amend his complaint. Moreover, he has proven unable to point to any authority that would allow him to overcome Fed. R. Civ. P. 16 and the Eleventh Circuit decisions

construing it.  Accordingly, Plaintiff's motion to amend the complaint should be denied.  The Court will now proceed to consider MCGHI's motion for judgment on the pleadings.

### B. Motion for Judgment on the Pleadings

Plaintiff's original complaint contains five separate and enumerated claims.  On November 24, 2010, MCGHI filed a motion for judgment on the pleadings as to all of them.  The five claims and all issues arising therefrom are considered in full below.

#### 1. Applicable Standard

The legal standards applicable to Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are the same.  Roma Outdoor, 558 F. Supp. 2d at 1284 ("A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss.").  Thus, like a motion to dismiss, a motion for judgment on the pleadings does not test whether the plaintiff will ultimately prevail on the merits of the case.  Rather, it tests the legal sufficiency of the complaint.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the

11

plaintiff.   See Hoffman-Pugh, 312 F.3d at 1225.   The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts.   Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949-50 (2009).   Further, "[i]n evaluating the sufficiency of a plaintiff's pleadings, [courts] make reasonable inferences in Plaintiff's favor, 'but [courts] are not required to draw plaintiff's inference.'"   Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citation omitted).   "Unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations."   Id.

In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6).   The Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   Id. at 555 (internal citations and punctuation omitted).   The Court further stated that although there was no probability requirement at the pleading stage, id. at 556, "something beyond . . . mere possibility . . . must be alleged," id. at 557 (citing Durma

12

Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)). Therefore, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 555, and sufficient to state a claim for "relief that is plausible on its face," id. at 570.

### 2. Claim I—42 U.S.C. § 1983 (First Amendment Claim)

In his first claim, Plaintiff asserts he reported matters of public concern to agents of MCG and MCGHI and, in retaliation for expressing his First Amendment rights, the named and unnamed Defendants conspired successfully to have Plaintiff's employment terminated. Because Claim I is based upon the deprivation of a constitutional right, it arises under 42 U.S.C. § 1983. In order to state a claim pursuant to § 1983, a plaintiff must allege that an individual or entity "(1) deprived [him] of a right secured under the Constitution or federal law and (2) that the deprivation occurred under color of state law." Willis v. Univ. Health Servs., Inc., 993 F.2d 837, 840 (11th Cir. 1993). Notably, "[a] defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis," even when the defendant is a private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992). In order to establish entity liability, such claims generally must be rooted in an official policy or custom. Id. Under certain circumstances, however, a claim may be brought based upon a single decision, if

13

the decision was one made by a person or entity that "possesses final authority to establish . . . policy with respect to the action ordered." Pembaur v. City of Cincinatti, 475 U.S. 469, 481 (1986).

In the instant case, the Court need not reach the core elements of a § 1983 claim because Plaintiff's "First Amendment Claim" is founded upon respondeat superior and/or vicarious liability. In other words, even assuming Plaintiff was deprived of a constitutional right under color of state law, his claim still fails because it is based on the acts of Defendants' individual employees rather than any official policy, custom, or final policymaker's decision.

To begin, Plaintiff does not allege or provide facts from which the Court could infer that either MCG or MCGHI has an official policy or custom that caused the alleged deprivation of Plaintiff's First Amendment rights. Instead, Plaintiff's allegations merely indicate he may have been retaliated against by individual employees in response to his specific acts.

Plaintiff argues the Complaint provides facts from which one could infer that Don Snell, CEO of MCGHI, "had final policymaking authority for MCGHI" and "was a policymaker in the area of personnel." (Doc. no. 50 at 19-20.) In support of this argument, Plaintiff cites the following portion of the Complaint: "On or about September 2005, Don Snell, CEO of MCGHI,

14

took action to discern if there was [sic] possible violation of the Board of Regent [sic] conflict of interest rules . . ." (Compl. ¶ 24.)   Nowhere in this paragraph does Plaintiff allege Snell possessed final policymaking authority.   Equally important, Plaintiff provides no facts from which the Court could reasonably draw such a conclusion.   Moreover, nowhere in the Complaint does Plaintiff expressly allege that Snell, or anyone else for that matter, was responsible for his termination.[7]   In the single paragraph addressing his termination, Plaintiff mentions no name or position, but rather ambiguously states, "[w]ithout any counseling or progressive discipline, on October 3, 2005, Plaintiff was terminated without notice . . . ."   (Id. ¶ 33.)   Put simply, the inferences Plaintiff suggests can be drawn from his Complaint are unreasonable given the extremely limited facts provided and the ambiguous nature of the pleading.   Based upon the allegations contained in the Complaint, Plaintiff is seeking to hold MCGHI liable under § 1983 for the acts of its unnamed, individual employees.   For the reasons stated above, this is not allowed and thus Plaintiff has failed to state a claim.

---

[7] Notably, Plaintiff appears to contend that Snell should be considered a "final policymaker" with regard to the firing of Plaintiff, but it is unclear how he could be considered as such when Plaintiff's Complaint states Plaintiff was employed with MCG, not MCGHI.   Although Snell may very well be both a "final policymaker" with regard to employment decisions made by MCG and MCGHI, there are simply no allegations to this effect.

3.   Claim II—42 U.S.C. § 1983 (Fourteenth Amendment
     Claim)

In Claim II, Plaintiff alleges the "actions and refusals to
act of the Defendant Board of Regents, MCG-MCGHI and John and
Jane Does, caused Plaintiff to be terminated in violation of
meaningful due process . . ." (Id. ¶ 49.)  MCGHI contends this
claim, because it also arises under § 1983, should be dismissed
for the same reasons as Count I.   That is, MCGHI argues
Plaintiff is again seeking to impose respondeat superior and/or
vicarious liability.

In response, Plaintiff appears to contend that MCGHI has
misconstrued his claim, which he describes as a "property
takings claim." (Doc. no. 59 at 1.)  He argues the Court lacks
jurisdiction over his claim because he has not "exhaust[ed] his
post-termination rights." (Doc. no. 50 at 1.)   According to
Plaintiff, "[t]here is no jurisdiction to make a due process
analysis of a process that has not yet been exhausted." (Id. at
7.)   In support of his jurisdiction-based argument, Plaintiff
cites Tex. Gas Transmissions, LLC v. Butler Cnty. Bd. of
Comm'rs, 625 F.3d 973 (2010).   In Tex. Gas, a plaintiff brought
a Takings Clause claim against various county officials as a
result of the county's plans to widen a roadway, which the
plaintiff alleged would detrimentally affect its property
interests.   Id. at 975.   The Sixth Circuit found that it lacked

16

jurisdiction over the matter because the plaintiff had not exhausted its available state remedies. Id. at 976.

Nowhere in Plaintiff's Complaint does he assert anything that could reasonably be construed as a Takings Clause claim. To begin, Plaintiff does not mention the "Takings Clause," the Fifth Amendment, or "just compensation." Instead, contrary to Plaintiff's belated characterization, Claim II is a typical procedural due process claim that is commonly asserted in cases like this one, where a government employee alleges that his or her employment was terminated without proper notice or a hearing. See, e.g., Shaw v. Oconee Cnty., Ga., 863 F. Supp. 1578, 1580 (M.D. Ga. 1994) (plaintiff brought suit under § 1983 after being fired from sheriff's department and alleged process provided in pre-termination hearing was constitutionally deficient).[8]

As to whether Plaintiff has successfully pled sufficient facts to support his procedural due process claim under § 1983, the Court finds he has not done so for largely the same reasons identified in the previous section. Plaintiff appears to mistakenly rely once again on a theory of respondeat superior or vicarious liability. The Court reiterates that Plaintiff has not identified, either directly or indirectly, a single MCGHI

---

[8] To the extent Plaintiff may have wished to assert a Takings Clause claim, the appropriate method of doing so would have been to timely amend the Complaint.

17

policy or custom, nor has he asserted facts from which the Court could find that the termination of his employment was the result of the decision of a final policymaker. See supra at pp. 13-15. Thus, Plaintiff has failed to state a claim pursuant to § 1983.

Finally, the Court notes Plaintiff's failure to exhaust his post-termination rights does not deprive the Court of jurisdiction over his due process claim. Although a procedural due process claim under § 1983 only arises "when the state refuses to provide a process sufficient to remedy the procedural deprivation," McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994), this rule does not amount to an exhaustion requirement. Id. at 1564 n.20 (noting exhaustion was irrelevant to decision as to whether due process claim failed as a matter of law). Rather, a "constitutionally-inadequate process" is merely a necessary element of an actionable procedural due process claim. See Laney v. Hosp. Bd. of Dirs. of Lee Cnty., No. 2:09-cv-678, 2010 WL 5161367, at *3 (M.D. Fla. Dec. 14, 2010) (explaining a procedural due process claim requires proof of the following: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."); see also Dingle v. City of Coleman, No. 5:10-cv-53, 2010 WL 4366886, at *5 (M.D. Fla. Oct. 28, 2010) ("The inability of the Plaintiff to allege that the State of Florida has refused to make available means through which to

remedy his alleged deprivation is fatal to his procedural due process claim."); Setchel v. Hart Cnty. Sch. Dist., No. 3:09-cv-92, 2009 WL 3757464, at *4 (M.D. Ga. Nov. 6, 2009) (granting motion to dismiss procedural due process claim after finding adequate state law remedies were available affording sufficient due process). Notably, in the instant case, Plaintiff's Complaint contains no allegations regarding the available state remedies and he does not allege that Georgia's termination procedures are inadequate.[9] Accordingly, Plaintiff's failure to allege that the state law remedies in place were inadequate provides yet further support for dismissal of Plaintiff's procedural due process claim.

### 4. Claim IV—42 U.S.C. § 1981

Plaintiff asserts "[o]ne or more of the Defendants individually or jointly acted to impair Plaintiff's right to contract and enjoyment of contracts under 42 U.S.C. § 1981." (Compl. ¶ 55.) Section 1981 provides, in part, as follows: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. As demonstrated by the plain text of the statute, the purpose of § 1981 is to prohibit intentional racial

---

[9] In fact, Plaintiff readily admits in his briefs that there are procedures he has yet to explore that "might cure all due process concerns and provide substantial remedies." (Doc. no. 50 at 4.)

discrimination in the making and enforcement of public and private contracts. Ferril v. Parker Grp., Inc., 168 F.3d 468, 472 (11th Cir. 1999). Thus, "[s]ection 1981 liability must be based on purposeful discrimination." Id.

In its motion, MCGHI correctly states that Plaintiff's Complaint does not contain a single allegation of purposeful discrimination and does not even identify Plaintiff's race. (Doc. no. 45 at 6.) MCGHI contends the complete lack of allegations regarding racial discrimination is fatal to Plaintiff's § 1981 claim. In response, Plaintiff apparently concedes that he has failed to state a claim under § 1981. Indeed, he declares that he "waives a claim under § 1981" (doc. no. 50 at 20) and wishes for the Court to "[d]ismiss Claim IV" (doc. no. 59 at 1).

Upon due consideration, the Court finds MCGHI is correct and Plaintiff has wholly failed to state a claim under § 1981. Accordingly, this claim should be dismissed in its entirety.

> 5.  *Claim V—First and Fourteenth Amendments, 42
> U.S.C. § 1981 and O.C.G.A. § 45-1-4*

In Claim V, Plaintiff alleges that "one or more Defendants have chilled and continue to chill the rights of Plaintiff and others to associate and communicate on protected matters." (Compl. ¶ 57.) In support of this claim, Plaintiff reasserts all of the legal causes of action set forth in his prior claims,

many of which are completely inapplicable to the factual allegations contained in Claim V. For instance, as stated by MCGHI, the Georgia Whistleblower Act and 42 U.S.C. § 1981 have virtually nothing to do with Claim V, which is based upon the "chilling of speech" with regard to the investigation of a pending lawsuit. Moreover, to the extent § 1983 may arguably apply, once again Plaintiff has failed to allege that any constitutional deprivation arose from an MCGHI policy or custom or was the result of a decision by a final policymaker. Finally, the Court notes that Plaintiff has provided virtually no argument in defense of this claim, and, in his sur-reply brief, Plaintiff seeks to have this claim dismissed due to lack of evidence. (See Doc. no. 59 at 9 ("Claim V should be dismissed without prejudice, and allowed to be filed when evidence shows that the current process of gathering evidence is being chilled.").)

For the reasons stated, Claim V should be dismissed for failure to state a claim.

### 6. Defendants "John and Jane Does"

In addition to bringing claims against MCG and MCGHI, Plaintiff has brought suit against "John and Jane Doe(s)," who are identified as "individual employees of the Defendant MCG and/or MCGHI" that served in supervisory roles. (Compl. ¶¶ 9, 28, 32.) As stated previously, the Court entered a scheduling

order on August 25, 2010, that set forth a deadline of October 26, 2010, for the filing of all motions to amend or add parties. In conjunction with this deadline, the Court provided a footnote that reads as follows: "The Court presumes Plaintiff will act expeditiously to ascertain the identities of the John and Jane Does currently named as Defendants." (Doc. no. 42.)

Now, nearly one year later, the unidentified defendants, who may be either MCG *or* MCGHI employees, remain unidentified. The Court notes, "[a]s a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). Although the Eleventh Circuit has created one limited exception "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage,'" id., this exception is inapplicable based upon the ambiguity surrounding the unnamed defendants identified in the Complaint. Moreover, the Court notes Plaintiff has wholly failed to act expeditiously in ascertaining the identities of the unnamed defendants.[10]   Accordingly, the Court finds, at this time, the unnamed defendants should be dismissed from this action.

---

[10] The Court notes again that Plaintiff had over four months of discovery, during which time he could have ascertained the identities of the unnamed defendants and sought leave to amend the complaint.

22

7. *State Law Claims*

In light of the foregoing, Plaintiff's sole remaining claim arises under state law.  In Claim III, Plaintiff contends MCGHI violated O.C.G.A. § 45-1-4, the Georgia Whistleblower Act, by retaliating against Plaintiff for performing protected activity. Due to the fact that the Court has dismissed all claims arising under federal law, the Court declines to exercise jurisdiction over this one remaining claim, and thus it should be dismissed without prejudice. See 28 U.S.C. § 1367(c)(3); see also Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (noting Eleventh Circuit encourages "district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial.").

### III. CONCLUSION

For the reasons set forth herein, Plaintiff Michael T. Brandenburg's "Motion for New Trial and to Add Defendants in their Official Capacities and Thereby Amend Order of 3.31.11" (doc. no. 73) is **DENIED**, and Defendant MCG Health, Inc.'s motion for judgment on the pleadings (doc. no. 44) is **GRANTED**.  Claims I, II, IV, and V are hereby **DISMISSED WITH PREJUDICE**, and the remaining Georgia Whistleblower claim is **DISMISSED WITHOUT PREJUDICE**.  Finally, Defendants John and Jane Doe are **DISMISSED** from this action.

In light of the dismissal of all claims and parties, the Clerk is **DIRECTED** to terminate all pending motions and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _12th_ day of September, 2011.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA